IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEIAHTY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-302-RJD |
| | ) | |
| JORDAN LENEAR, DR. JOHN COE, | ) | |
| BENJAMIN VAUGHN, and KEVIN | ) | |
| BLEVINS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Keiahty Jones, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). Generally, Plaintiff alleges he was forced to perform job duties that he was not physically able to complete due to back spasms and, as a result, he fell and suffered injuries to his head and other parts of his body. Plaintiff is proceeding on the following claims, as identified in his First Amended Complaint:

Count One: Defendants Lenear and Vaughn acted with deliberate indifference to Plaintiff's serious medical needs involving his back spasms in violation of the Eighth Amendment.

Count Two: Defendants Coe and Blevins acted with deliberate indifference to Plaintiff's serious medical needs related to his fall that occurred in December 2015.

Count Three: State law claim for intentional infliction of emotional distress against Defendants Lenear, Vaughn, Coe, and Blevins.

Defendants filed motions for summary judgment (Docs. 77 and 79) that are now before the

Court. For the reasons set forth below, Defendants' Motions are **GRANTED**.

## Factual Background

At all times relevant to the complaint in this matter, Plaintiff was incarcerated at Lawrence Correctional Center ("Lawrence") (Deposition of Keiahty Jones, Doc. 78-1 at 4). Prior to the incident alleged in his complaint, Plaintiff suffered from back pain and back spasms (*Id.* at 3-4, 15). Plaintiff had been prescribed Naproxen for his pain prior to the incident giving rise to this complaint (*Id.* at 22). The allegations in the complaint relate to events that began on December 26, 2015 at Lawrence. On that date, Plaintiff was working as a breakfast porter, as he had for the preceding months (*Id.* at 15). As a breakfast porter, Plaintiff was charged with going to dietary around 4:00 a.m., bringing the breakfast trays to the cellhouse, and then passing the trays out to the inmates (*Id.*). On the date of the incident, Plaintiff knew his back was "flaring up" and he was about to have a spasm (*Id.* at 15-16). Plaintiff told Defendant Lenear about his back, and Defendant Lenear told Plaintiff he had to go to work or he would be disciplined (*Id.* at 16). Plaintiff did not have paperwork showing he could not work (Deposition of Jordan Lenear, Doc. 78-2 at 9). Plaintiff told Lenear to get a supervisor (Doc. 78-1 at 35). Defendant Lenear spoke with Defendant Lt. Vaughn, his supervisor, on the phone (Doc. 78-2 at 9). Vaughn recalls having a conversation with Lenear in which Lenear indicated he had an offender who was having some back problems and did not want to work (Deposition of Benjamin Vaughn, Doc. 78-3 at 8). Vaughn told Lenear that if Plaintiff did not have a medical lay-in or note from his doctor precluding him from work, he would receive a minor ticket for failure to report (*Id.* at 9). Vaughn testified that the first offense on such a ticket would typically result in a verbal reprimand, as would a second ticket, while a third ticket for this offense would typically result in removal from the inmate's job assignment (*Id.*).

Plaintiff testified that after Lenear spoke with Defendant Vaughn, Lenear advised Plaintiff that he had to go to work or he would go to segregation (Doc. 78-1 at 16). Plaintiff then got ready for work and went to the kitchen (*Id.*). Plaintiff pushed the cart, which held approximately 300 breakfast trays, from the kitchen to the housing unit (*Id.*). Plaintiff testified that after he returned to the housing unit, he told another correctional officer, as well as Defendant Lenear, that his back was hurting (*Id.*). Plaintiff told Lenear he needed to go to healthcare (*Id.*). Lenear indicated Plaintiff needed to do his job (*Id.*). Plaintiff then continued his work and, when he went to carry a cart of juices and milk up the stairs, he felt his back jerk and buckle, and he fell backward down the stairs (*Id.* at 16-17).

Another inmate porter ran to notify a correctional officer (*Id.* at 16). A "Code 3," or medical emergency message was issued over the radio to signal that Plaintiff required emergency medical assistance (Declaration of Kevin Blevins, LPN, Doc. 81 at ¶¶ 2, 4). Vaughn, Lenear, and Defendant Nurse Blevins arrived on the scene (Doc. 78-1 at 18; Doc. 80-3 at ¶ 5). Both Vaughn and Lenear completed incident reports (*see* Docs. 78-4 and 78-5). Plaintiff was placed on a stretcher with the assistance of Blevins (Doc. 78-1 at 18). Blevins attests that after he transported Plaintiff to the healthcare unit, he entrusted Plaintiff's care to the staff in that unit (Doc. 80-3 at ¶ 9). Plaintiff testified that Blevins did "absolutely nothing" for him once he was in the healthcare unit, and failed to ensure another medical provider was readily available to attend to or examine his injuries (Doc. 78-1 at 20, 31). As a result, Plaintiff testified he was made to wait forty-five minutes for any evaluation or further medical care (*Id.* at 20). Plaintiff was ultimately examined by a nurse, provided some pain medication and sent back to his cell on a three-day medical lay-in, on Dr. Coe's orders (Doc. 78-1 at 15, 20; *see* Doc. 80-2 at 4-5). Blevins did not have any further contact with Plaintiff after assisting in transporting him to the healthcare unit (Doc. 81 at ¶ 12).

Plaintiff's pain persisted after his fall, so he requested additional health care after three days in his cell without further medical attention (Doc. 78-1 at 21).

On December 30, 2015, Plaintiff was seen by Defendant Dr. Coe, the Medical Director at Lawrence (*Id.* at 22; Declaration of John Coe, M.D., Doc. 80-2 at ¶ 6). On that date, Dr. Coe examined Plaintiff and interviewed him about his condition (*Id.* at ¶ 7; Doc. 78-1 at 22). In Plaintiff's medical records, Dr. Coe noted that Plaintiff had fallen down steps; that he had pain in his lower back that extended to his right leg; and that he had pain in his neck (Doc. 80-2 at ¶ 7a; *see* Doc. 80-2 at 7). Dr. Coe performed a straight leg raising test that was negative, and found that Plaintiff's reflexes were "ok" (*Id.*). Dr. Coe also noted that Plaintiff could walk with difficulty and that he had chronic back pain (*Id.*). Dr. Coe prescribed Dexamethasone (to treat inflammation), Tylenol 3 (to treat pain), and Flexeril (to treat pain and muscle spasms) (Doc. 80-2 at ¶ 8; *see* Doc. 80-2 at 7). Plaintiff was also admitted to the infirmary for 23 hours of observation (*Id.*). Plaintiff testified that Dr. Coe thought Plaintiff was just seeking narcotics (Doc. 78-1 at 22). Dr. Coe saw Plaintiff again the next day, December 31, 2015 (Doc. 80-2 at ¶ 9). During this appointment, Dr. Coe noted that Plaintiff was "better," that he had only limited range of motion, and was wearing a back support (*Id.* at ¶ 10). Dr. Coe again ordered prescriptions for Dexamethasone, Tylenol 3, and Flexeril, and ordered a follow-up appointment (*Id.*). Dr. Coe also ordered crutches, and extended Plaintiff's medical lay-in permit and low bunk/low gallery permit (*Id.* at ¶ 11).

Plaintiff was discharged from the infirmary and convalesced in his cell on a medical lay-in for one week (Doc. 78-1 at 24). After several days, Plaintiff suffered side effects from his medications, including bloody and hardened stool and dizziness (*Id.*). These side effects lasted approximately one and one-half weeks, and subsided shortly after Plaintiff stopped taking his

medications (*Id.*). Plaintiff reported these side effects to a nurse administering the medications, who indicated she would pass the information along to Dr. Coe (*Id.* at 25). Plaintiff testified he did not know whether the nurse passed along his complaints (*Id.*). Dr. Coe has no recollection of being informed that Plaintiff was suffering from any side effects of the medication (Doc. 80-2 at ¶ 12).

Plaintiff next saw Dr. Coe for a follow-up appointment on January 14, 2016 (Doc. 80-2 at ¶ 14; *see* Doc. 80-2 at 10). During this appointment, Dr. Coe noted Plaintiff continued to have pain, but he was moving around without noticeable difficulty and that Plaintiff had returned to work (Doc. 80-2 at ¶ 15). Dr. Coe diagnosed Plaintiff with lumbar back pain and prescribed Tramadol twice per day for two weeks (*Id.*). Plaintiff testified he does not recall whether he complained to Dr. Coe about head pain; however, he reported issues with his stool (Doc. 78-1 at 26). Plaintiff was transferred from Lawrence to Danville Correctional Center on January 30, 2016, and was no longer under the care of Dr. Coe after his transfer (*Id.*).

While under the care of Dr. Coe, Plaintiff filed grievances requesting to see outside specialists because the medications he was prescribed were not working (Doc. 78-1 at 46). Plaintiff's requests for alternative treatment were not granted, and he continues to have frequent back pain and headaches (*Id.* at 41).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of

material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

***Count One – Eighth Amendment Deliberate Indifference Claim against Defendants Lenear and Vaughn***

Plaintiff claims Defendants Lenear and Vaughn acted with deliberate indifference to his medical condition in sending Plaintiff to work on December 26, 2015, despite knowing his medical condition posed a substantial risk of serious harm to him.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important

and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A factfinder may also conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* (internal quotations omitted).

For purposes of summary judgment, it appears Defendants concede that Plaintiff's back pain presented a serious medical need. Thus, the question before the Court is whether there is sufficient evidence for a reasonable jury to conclude that Defendants acted with deliberate indifference in sending Plaintiff to work despite having knowledge of his medical condition.

When viewing the evidence in the light most favorable to Plaintiff, the Court finds

Defendants Vaughn and Lenear understood Plaintiff was experiencing back pain prior to beginning work on December 26, 2015, and were advised Plaintiff believed he would experience a back spasm. Defendant Lenear and Defendant Vaughn (through Defendant Lenear) communicated to Plaintiff that his failure to work would result in punishment, the nature of which is disputed. In any event, the Court does not find Defendants acted with deliberate indifference in sending Plaintiff to work. Plaintiff did not have a medical lay-in or a medical restriction from working on that date. Moreover, Plaintiff merely indicated he was *going* to have a back spasm, and there was no indication he was currently experiencing a back spasm when Lenear and Vaughn were sending him to work. Plaintiff had also worked as a porter for months while experiencing back issues without issue. As such, it is improbable that a jury would find that either Lenear or Vaughn ignored a substantial risk to Plaintiff's health in sending him to work. Finally, a refusal to address Plaintiff's general complaints of back pain at the time in question does not establish a claim of deliberate indifference, particularly because there is no evidence that the pain he was experiencing was greater than his "typical," or ongoing pain. *See, e.g., Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (stating that a prison medical staff's refusal to treat minor "ailments for which many people who are not in prison do not seek medical attention does not by its refusal violate the Constitution").

For the reasons set forth above, Defendants Lenear and Vaughn are entitled to summary judgment on Count One. Because the Court finds Defendants did not violate Plaintiff's constitutional rights, it need not consider the question of qualified immunity.

*Count Two – Eighth Amendment Deliberate Indifference Claim against Defendants Coe and Blevins*

Plaintiff contends Defendant Nurse Blevins and Dr. Coe's actions, or lack thereof, delayed

his access to treatment and prolonged his pain and suffering.  Defendants assert they were not deliberately indifferent to the injuries Plaintiff sustained after his fall.

**Defendant Nurse Kevin Blevins**

The evidence in the record, when viewed in the light most favorable to Plaintiff, establishes that Defendant Blevins responded to the Code 3 that was called for Plaintiff and assisted in placing him on a stretcher.  Blevins then transported Plaintiff to the healthcare unit.  Blevins did not render any medical care for Plaintiff at the healthcare unit and Plaintiff was made to wait forty-five minutes for an evaluation.   Plaintiff was ultimately provided with pain medication and a three-day medical lay-in.

Plaintiff asserts Blevins was deliberately indifferent to his medical needs by leaving Plaintiff without medical care immediately after his fall.   Thus, the crux of the issue with regard to Blevins is whether the delay of forty-five minutes for medical treatment in this instance rises to deliberate indifference, and the Court finds that it does not.  The Seventh Circuit has remarked that "[d]elay is not a factor that is either always, or never, significant. Instead, the length of the delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment."  *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (dismissal for failure to state a claim proper because six-day wait to see a doctor was not unreasonably long for infected cyst deemed not that severe) (other citations omitted).  In consideration of the injuries Plaintiff sustained and the resulting medical care that was provided (Ibuprofen and a medical lay-in), a forty-five minute delay for treatment was not unreasonably long and does not rise to deliberate indifference on the part of Blevins.  Also, it is undisputed that Blevins entrusted Plaintiff to the care of other health professionals in the healthcare unit.   There is no indication that Blevins knew Plaintiff would not be examined for

forty-five minutes or that he suffered an emergency medical condition that Blevins ignored or failed to address. For these reasons, the Court finds that Defendant Blevins is entitled to summary judgment on Count Two.

**Defendant Dr. John Coe**

Plaintiff contends Dr. Coe was deliberately indifferent in failing to take reasonable measures to deal with Plaintiff's back injury, injuries from his fall, and subsequent side effects from the medication administered to Plaintiff.

First, the Court considers Plaintiff's contention that Dr. Coe was deliberately indifferent in failing to examine him prior to December 30, 2015. Based on the evidence in the record, it is undisputed that Plaintiff was examined by a nurse after his fall and Dr. Coe was notified. Plaintiff received Ibuprofen and was provided a three-day medical lay-in. Plaintiff complains that Dr. Coe did not order an MRI, physical therapy, or refer Plaintiff to a specialist. There is no indication in the record, however, that such treatment options were necessary or would have resulted in a different or more effective course of treatment. Notably, the record before the Court provides no indication that the treatment rendered to Plaintiff, and apparently approved by Dr. Coe was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes*, 95 F.3d at 592). Furthermore, the decision to forego diagnostic testing is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107.

Next, with regard to Dr. Coe's subsequent treatment of Plaintiff's complaints, the Court finds no reasonable jury could find Dr. Coe acted with deliberate indifference. While Plaintiff clearly disagrees with Dr. Coe's course of treatment and complains of the side-effects from the medication regimen, it is well-established that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical

treatment was "blatantly inappropriate." *Pyles*, 771 F.3d at 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Making such a showing is not easy as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Pyles*, 771 F.3d at 409 (citations omitted).

There is no evidence that Dr. Coe failed to exercise his professional judgment in rendering treatment to Plaintiff. Indeed, Dr. Coe examined Plaintiff three times over a 35-day period (prior to Plaintiff's transfer) and provided prescription medication and a medical lay-in. Although such treatments may not have reduced Plaintiff's pain in its entirety, the records fails to demonstrate that such lack of success was the result of Dr. Coe's deliberate indifference. *See e.g. Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). There is also no evidence that Dr. Coe was advised Plaintiff was suffering adverse side-effects from his medication regimen. Plaintiff also testified that these side-effects had abated after he stopped taking his medication. Dr. Coe followed-up with Plaintiff just two weeks after prescribing his medication regimen, and there is no evidence that a two-week delay in

a follow-up appointment was unreasonable or blatantly inappropriate. Accordingly, the Court finds that Dr. Coe's treatment of Plaintiff was grounded in professional judgment and was reasonable. For the above-mentioned reasons, Dr. Coe is entitled to judgment as a matter of law on Count Two.

***Count Three – State law Claim for Intentional Infliction of Emotional Distress against Defendants Lenear, Vaughn, Coe, and Blevins[1]***

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "unwarranted intrusion … calculated to cause severe emotional distress to a person of ordinary sensibilities." *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So.2d 396 (Fla. 1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). There are three requirements necessary to demonstrate the intentional infliction of emotional distress: "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress." *Id.* at 490. Although it does not require a contemporaneous physical injury, the tort does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (quotations and citations omitted).

Plaintiff alleges the conduct of Defendants was extreme and outrageous and caused severe emotional distress to Plaintiff. The Court has found that Defendants did not act with deliberate indifference to Plaintiff, and there is no evidence that Plaintiff suffered "severe emotional

---

[1] Defendants sought summary judgment as to Count Three, and Plaintiff failed to respond to Defendants' arguments in response. As such, it appears Plaintiff has conceded that summary judgment on Count Three is warranted. The Court, however, engages in a brief analysis on Count Three out of an abundance of caution.

distress." As such, no reasonable jury could find that Defendants intentionally inflicted emotional distress on Plaintiff and Defendants are entitled to summary judgment on Count Three.

### Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Jordan Lenear and Benjamin Vaughn (Doc. 77) is **GRANTED**; and the Motion for Summary Judgment filed by Defendants Dr. John Coe, and Nurse Kevin Blevins (Doc. 79) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants Lenear, Vaughn, Coe, and Blevins, and against Plaintiff.

**IT IS SO ORDERED.**

**DATED: March 20, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**